Bradley T. Hunsicker (Wyo. Bar 7-4579)
**MARKUS WILLIAMS YOUNG & HUNSICKER LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: 307-778-8178
bhunsicker@markuswilliams.com

Jeffrey M. Eilender (*pro hac vice to be submitted*)
Bradley J. Nash (*pro hac vice to be submitted*)
Joshua D. Wurtzel (*pro hac vice to be submitted*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
jeilender@schlamstone.com
bnash@schlamstone.com
jwurtzel@schlamstone.com

Attorneys for Creditors CWT Canada II Limited Partnership
and Resource Recovery Corporation

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In Re:<br><br>DENNIS MEYER DANZIK,<br>xxx-xx-1786<br><br>Debtor. | Case No. 19-20116<br>Chapter 7 |

---

## MOTION TO DISMISS CHAPTER 7 CASE, WITH PREJUDICE

Creditors CWT Canada II Limited Partnership ("CWT Canada") and Resource Recovery Corporation ("RRC") (the "CWT Parties") submit this *Motion to Dismiss to Dismiss Chapter 7 Case, with Prejudice* (the "Motion") for "cause" under 11 U.S.C. § 707(a) on the basis that Dennis Danzik ("Debtor") filed this case in bad faith, inconsistent with the purpose of Chapter 7, and allowing Debtor to proceed in Chapter 7 renders this Court's repeated decisions on dismissal versus conversion meaningless.

**INTRODUCTION**

1.      As this filing shows, Debtor is the poster child for those who abuse our bankruptcy courts to evade, rather than benefit, creditors.  As this Court is painfully aware, this is now Debtor's **third** bankruptcy filing—with this case being filed just **one month** after Debtor's last Chapter 11 case was dismissed and just **four days** after this Court denied Debtor's motion to alter or amend the judgment in that case.  Indeed, after this Court held that Debtor's Chapter 11 case should be dismissed, rather than converted to a Chapter 7, Debtor filed this Chapter 7 anyway—thus helping himself to relief to which this Court held he was not entitled and seeking to render this Court's carefully-reasoned decision meaningless.

2.      Further, as explained below, while this Court held in its order dismissing Debtor's recent Chapter 11 case that Debtor has insufficient assets to meaningfully satisfied **unsecured** creditors—and so Chapter 7 is inappropriate—this conclusion is even **better supported today**, now that the CWT Parties have a nondischargeable $7 million judgment against Debtor.

3.      Thus, this bankruptcy filing is nothing more than a desperate attempt by Debtor to avoid the CWT Parties' judgment against him and to try to run up their costs in the hope that they simply give up.  To some extent, Debtor's plan has worked—since this third filing has now temporarily stayed the CWT Parties' enforcement efforts, and the CWT Parties must now spend more time and money moving to dismiss this **third** bankruptcy.  But this Court should not allow Debtor to use this Court and our country's bankruptcy system as his own personal "pause" button that he can press at any time and

for any reason.  Thus, as explained below, this Court should dismiss this case immediately, and should bar Debtor from any further bankruptcy filings for 180 days.

## BACKGROUND

4.    On January 4, 2016, Dennis M. Danzik (the "Debtor") filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code, Case No. 16-20002 (the "First Case").

5.    While the First Case was pending, the CWT Parties sought judgment against Debtor in New York State Court.  *GEM Holdco LLC, et al., v. Changing World Technologies, L.P., et al.* (Sup. Ct. N.Y. Co.), Index No.: 650841/2013 (the "New York Action").

6.    On June 3, 2016, as a part of the New York Action, the New York court held Debtor in criminal and civil contempt for his violation of court orders.  Specifically, that court held that he (a) deliberately violated an attachment order directing him to return the stolen Tax Credits; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft.  The New York Court held Debtor in contempt and issued a commitment order and arrest warrant for Debtor.

7.    The New York Court found that Debtor is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court."

8.    On September 7, 2016, the CWT Parties obtained judgment in the amount of $7,033,491.13 against Debtor in the New York Action (the "New York Judgment").

9.      On March 8, 2017, the Court found "cause" to dismiss the First Case under § 1112(b) based on the following factors: (1) Debtor was unable to effectuate a plan; (2) there was substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation; (3) Debtor had failed to meet filing and reporting requirements; (4) Debtor had failed to pay taxes; and, (5) Debtor lacked good faith in filing and administering the case.  *See* Order on Sigma Opportunity Fund II, LLC's Motion to Dismiss, *In re Danzik*, Case No. 16-20002, Doc. 393 *passim* (Bankr. D. Wyo. March 8, 2017) (hereinafter "Ruling Dismissing the First Case").  In addition, the Court addressed whether dismissal or conversion was in the best in interest of creditors and concluded that the case should be dismissed, not converted.  *Id.* at 19.

10.     On December 6, 2017, Debtor filed a second Chapter 11 bankruptcy petition in this Court, starting Case No. 17-20934 (the "Second Case").   On October 24, 2018, the CWT Parties filed their *Motion to Dismiss* the Second Case, which the Court took under advisement.

11.     On February 6, 2019, the Court found cause to dismiss the Second Case under § 1112(b)(1).  *See* Decision Memorandum on CWT's Motion to Dismiss, *In re Danzik*, Bankr. Case. No. 17-20934, Doc. 201 (Bankr. D. Wyo. February 6, 2019) (hereinafter "Ruling Dismissing the Second Case").  In particular, the Court found that the CWT Parties showed that "Debtor 1) is grossly mismanaging the estate by failing to timely file monthly operating reports, 2) is not able to effectuate a confirmable plan; and 3) filed this case in bad faith."  *Id.* at 15.  In finding that Debtor filed the case in bad faith, the Court found that "Debtor is using the breathing space to avoid his financial obligations.  He has

not argued nor demonstrated he is using it to rehabilitate any business." *Id.* at 10–11.

Further, the Court quoted the Ruling Dismissing the First Case, and concluded that

"Debtor's circumstances have not changed.  The CWT litigation continues, and Creditors'

claims are on hold while Debtor parks in bankruptcy."  *Id.* at 12.  In short, the Court

concluded that Debtor had again filed in bad faith and misused bankruptcy protection to

avoid his creditors and stall litigation.  *Id.*

12.    In the Ruling Dismissing the Second Case, the Court again addressed

whether dismissal or conversion was in the best interest of creditors and expressly followed

the reasoning in its Ruling Dismissing the First Case:

> CWT requests dismissal rather than conversion.  Mr. Danzik's exempt assets
> would only be available to the IRS and secured creditors, leaving no assets
> for a trustee to administer.  There is no pending litigation that would benefit
> a Chapter 7 estate.  The court applies the same analysis from Debtor's first
> case:
>
>> It is in the best interest of the estate to dismiss.  Any liquidation
>> would be for the sole benefit of the secured creditors.  A
>> liquidation bankruptcy case is not administered for the benefit
>> of a debtor's secured creditors but for the benefit of its
>> unsecured creditors.
>
> Therefore, it is in the best interest of the estate and creditors that the court
> dismiss the case.

*Id.* at 13–14 (footnotes and internal quotation marks omitted).  The Court dismissed the

Second Case, but it has not been closed, and remains open and pending.

13.    Finally, on February 14, 2019, Debtor filed his *Motion for Alteration or

Amendment of an Order of the Court* (the "Motion to Alter") in the Second Case, in which

Debtor asked the Court to alter its judgment and convert the Second Case to Chapter 7

instead of dismissing it.  On February 27, 2019, the CWT Parties filed their objection to

the Motion to Alter.

14.     On March 8, 2019, the Court denied the Motion to Alter:

> Debtor never argued for conversion to Chapter 7 liquidation proceedings
> instead of dismissal before or during the hearing.  While Debtor repeatedly
> asserted creditors would be better served by proceedings in bankruptcy court
> rather than collection actions in state court, these arguments were brought in
> the context of his attempts to remain within Chapter 11 proceedings.  All
> creditors had notice of CWT's Motion to Dismiss, yet none contested it or
> advocated for conversion to Chapter 7, rather than dismissal.

Order Denying Motion to Alter or Amend Court's Order, *In re Danzik*, Case. No. 17-

20934, Doc. 211 at 2 (Bankr. D. Wyo. March 8, 2019) (hereinafter, "Order Denying Motion

to Alter").

15.     On March 12, 2019, Debtor filed a voluntary Chapter 7 petition, starting the

above-captioned bankruptcy case, No. 19-20116 (the "Third Case," or "this case").

16.     On March 18, 2019, the Court entered judgment in favor of the CWT Parties

on their nondischargeability claim.  *See* Memorandum Decision and Order Granting in Part

and Denying in Part, CWT Parties' Motion for Partial Summary Judgment, Bankr. No. 17-

20934, Adv. No. 18-02007, Doc. 38 at 10 (Bankr. D. Wyo. March 18, 2019) (hereinafter,

"Ruling on Dischargeability").  In the Ruling on Dischargeability, the Court held that the

$7,033,491.13 judgment that the CWT Parties obtained against Debtor in New York State

Court in *GEM Holdco LLC, et al., v. Changing World Technologies, L.P., et al.* is

nondischargeable:

> The New York Court held that Danzik committed fraud, breached his
> obligations pursuant to a constructive trust, and that Danzik stole the CWT
> Parties' funds. Danzik may not re-litigate issues that the New York Court

already adjudicated.  The Judgment is non-dischargeable as a matter of law under Sections 523(a)(2) and (a)(6).

*Id.* at 9–10.

## AUTHORITY AND ARGUMENT

17.     The Bankruptcy Code Provides: "The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including . . . ."  11 U.S.C. § 707(a).  "The enumerated grounds for a 'for cause' dismissal are not exhaustive, but merely illustrative."  *In re Jakovljevic-Ostojic*, 517 B.R. 119, 126 (Bankr. N.D. Ill. 2014) (internal quotation marks omitted).

18.     Here, there is 'cause' to dismiss under § 707(a).  First, Debtor filed this case in bad faith and without proper purpose.  Second, because the Court has already ruled that Debtor's Chapter 11 should be dismissed, not converted to Chapter 7, the doctrine of res judicata bars Debtor and his creditors from opposing dismissal.  Finally, because Debtor's conduct is egregious, the dismissal should be with prejudice and bar refiling for 180 days. The Court should dismiss the case with prejudice.

### I.     Debtor Filed this Case in Bad Faith and Without Proper Purpose

19.     "Although not listed as one of the enumerated factors constituting cause' for dismissal under § 707(a), most courts have held that evidence of a debtor's 'bad faith' in filing a Chapter 7 case is cause for dismissal."  *In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282, at *8 (Bankr. D.N.M. July 10, 2015).  "To determine whether a chapter 7 case was filed in bad faith, courts must review the totality of the circumstances." *Id.* at 9.  "A debtor's pre-petition conduct is relevant to a court's good faith analysis.  This includes, among other things, the debtor's past bankruptcy filings."  *In re Brown*, 399 B.R.

162, 169 (Bankr. W.D. Va. 2009) (internal quotation marks and citation omitted)

(analyzing whether a debtor's bad faith in filing was "cause" under § 1307(c)).

20.     The Eleventh Circuit has characterized the totality of the circumstances test

for bad faith under § 707(a) as follows:

> **The totality-of-the-circumstances inquiry looks for atypical conduct, that falls short of the honest and forthright invocation** of the [Bankruptcy] Code's protections.  In making that determination, bankruptcy courts must, as they so often do, sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done.  Under this inquiry, **bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code**.

*In re Bushyhead*, 525 B.R. 136, 146 (Bankr. N.D. Okla. 2015) (internal quotation marks

and citations omitted) (emphasis added) (alterations in original).

21.     In addition, bankruptcy courts have identified sixteen factors that should be

considered in the totality-of-the-circumstances analysis:

1. **Whether the debtor's manipulations (if any) had the effect of frustrating one particular creditor;**
2. **The absence of an attempt to pay creditors;**
3. The debtor's failure to make significant lifestyle changes;
4. Whether the debtor has sufficient resources to pay a substantial portion of debts;
5. Whether the debtor inflated expenses to disguise financial well-being;
6. **Whether the debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;**
7. Whether the debtor reduced his creditors to a single creditor in the months prior to filing his petition;
8. Whether the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
9. **Whether the debtor filed the case in response to a judgment in pending litigation;**
10. The unfairness of using Chapter 7;
11. Whether the debtor is paying debts to insiders;
12. Whether the debtor transferred assets;

13. **Whether the debtor employed a deliberate and persistent pattern of evading a single major creditor;**
14. Whether the debtor failed to make candid and full disclosure;
15. Whether the debts are modest in relation to assets and income; and
16. **Whether there are multiple bankruptcy filings or other procedural 'gymnastics.'**

*In re McGuire-Pike*, No. 14-13365 ta7, 2015 Bankr. LEXIS 2282, at *9 (Bankr. D.N.M. July 10, 2015) (emphasis added); *see also In re Baird*, 456 B.R. 112, 116 (Bankr. M.D. Fla. 2010) (characterizing the ninth factor as whether "the debtor filed the case in response to a judgment, pending litigation, or collection action"). The circumstances of each debtor are unique, and the proper weight given to each fact necessarily depends on all of the other facts presented." *In re Kane & Kane*, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009). "The determination of whether cause exists to dismiss a case under section 707(a) lies within the sound discretion of the bankruptcy court." *In re Jakovljevic-Ostojic*, 517 B.R. 119, 126 (Bankr. N.D. Ill. 2014).

### a. The 16 Factors Show that Debtor filed in Bad Faith

22.    Here, the Court is familiar with Debtor's actions and litigation tactics in this and other jurisdictions, both inside and outside of bankruptcy. Debtor's conduct in these cases, and his efforts to thwart the CWT Parties' collection actions, indisputably meet the six bolded factors in the quotation above and show that he filed this case in bad faith.

23.    First, Debtor's manipulations, in this court and others, have frustrated the CWT Parties efforts to collect their judgment. Indeed, in his motion to alter or amend, Debtor admitted that the purpose of a Chapter 7 filing would be to prevent the CWT Parties from garnishing funds he (erroneously) believes should be used to pay other creditors.

24.    Second, outside of bankruptcy Debtor has made no effort to pay creditors, and even over the course of two lengthy Chapter 11 cases, Debtor made no effort to pay creditors or even formulate and propose—much less confirm—a plan.  Indeed, Debtor has mounted multiple, frivolous collateral attacks on the CWT Parties' New York judgment in multiple jurisdictions in an effort to avoid paying this judgment and run up the CWT Parties' costs in the hope that they stop pursuing him.  All these efforts have failed, including his most recent unsuccessful motion to vacate in New York.  And this Court has now held that this judgment is nondischargeable.  Thus, as with his Chapter 11 case, Debtor is using the protection of our bankruptcy system as a final, desperate attempt to avoid a judgment that multiple courts across the country have refused to undo.

25.    Third, as explained above, given that this is Debtor's third bankruptcy since 2016, and that Debtor made no effort to pay creditors, Debtor is certainty "overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors."

26.    Fourth, Debtor filed this Chapter 7 "in response to . . . a collection action," *In re Baird*, 456 B.R. at 116, namely, the CWT Parties commenced post-judgment collection activities after the Court dismissed his Second Case.  It is prejudicial to the CWT Parties to now, for the third time, be forced to cease collection efforts on their judgment the very moment they begin enforcement action, further evidencing the third factor.  Debtor's filing this case simply to reimpose the automatic stay and thwart the CWT Parties' collection action shows bad faith and is cause, standing alone, to warrant dismissal:

> There is no question that the debtor filed his second petition to reinvoke the
> automatic stay and frustrate foreclosure by Chase.  The debtor's sole
> intention was to thwart Chase's exercise of its rights under state law.  This

conduct was inequitable with respect to Chase. The debtor manipulated the Bankruptcy Code and materially hindered the administration of the Confirmed Case by attempting to reinvoke the automatic stay where this Court granted Chase relief therefrom in another pending case.

*In re Brown*, 399 B.R. 162, 170 (Bankr. W.D. Va. 2009). Likewise, Debtor filed this case after the CWT Parties obtained relief through dismissal (again) and diligently began exercising its rights under state law. The fourth factor shows that Debtor filed this case in bad faith and is 'cause' to dismiss the case under § 707(a).

27.     Fifth, Debtor has indisputably "employed a deliberate and persistent pattern of evading" the CWT Parties' efforts to collect their judgment against him.

28.     And sixth, Debtor has "multiple bankruptcy filings" and has engaged in "procedural 'gymnastics'" to avoid the CWT Parties. As explained above, Debtor has filed in multiple jurisdictions under various entities, used his own bankruptcy or the bankruptcy of another entity to avoid or stall actions against himself or other entities, and has repeatedly sought reconsideration of this and other courts' adverse orders, or in the case of the New York court, simply ignored them.

29.     These facts all show that Debtor filed this case in bad faith. The Court should dismiss this case under § 707(a).

### b. Debtor's Purpose and Motive in Filing the Case are Inconsistent with the Purpose of Chapter 7 - To Pay Creditors and Provide Debtor with a 'Fresh Start'

30.     The unique facts and circumstances of this filing, not captured by the 16 factors quoted above, also show that Debtor's purpose and motive in filing this case are inconsistent with the purpose of Chapter 7, which is to pay creditors and give debtors a

fresh start.  Indeed, Debtor has few, if any, assets available to pay unsecured creditors.  And

Debtor now owes a $7 million **nondischargeable** debt to the CWT Parties.  So, given

Debtor's lack of assets, Debtor will not obtain a fresh start.  Finally, Debtor filed this case

as an end-run around the Court's prior decisions.  The Court should thus dismiss the case.

31.    First, Debtor cannot fulfil the purposes of Chapter 7 because Debtor has few,

if any, assets to pay unsecured creditors.  Debtor's claim that his creditors will be better

off—or treated more fairly—in Chapter 7 is erroneous.  The Court has already noted that

there are no real assets to pay unsecured creditors this case: "There were little to no funds

to pay unsecured creditors' debt amassing in the millions based upon the evidence

presented."  Order Denying Motion to Alter at 3.  And, as the Court held in its Ruling

Dismissing the Second Case, a "liquidation bankruptcy case is **not administered for the

benefit of a debtor's secured creditors but for the benefit of its unsecured creditors.**"

32.    The CWT Parties are the only unsecured creditors that have been pursuing

Debtor.  The fact that the CWT Parties restrained some of Debtor's assets after his Chapter

11 case was dismissed does not make Chapter 7 any more appropriate.  Indeed, the CWT

Parties are entitled to seek recovery of their stolen tax credits and the proceeds of those

stolen tax credits (e.g., money Debtor earned through the use of these stolen tax credits).

And if these restrained assets genuinely belong to Debtor (which the CWT Parties dispute

on the basis that the funds are, at a minimum, proceeds of the stolen tax credits), then the

IRS or other secured creditors can assert their rights outside of bankruptcy.

33.    Further, Debtor does not dispute that this bankruptcy is intended to *prevent*

the CWT Parties from enforcing their judgment against Debtor.  Debtor's assertion that he

filed this case to pay creditors, when the Court has already found that he has no assets to do so, shows that Debtor did not file this Chapter 7 so that he can pay creditors but to delay the CWT Parties' collection efforts.  This is an improper purpose and the Court should dismiss the case.

34.    Second, Debtor cannot fulfil the purposes of Chapter 7 because Debtor cannot obtain a 'fresh start.'   Debtor's $7 million debt to the CWT Parties is nondischargeable.  *See In re Bilzerian*, 258 B.R. 850, 858 (Bankr. M.D. Fla. 2001) (debtor's "inability to discharge virtually any significant debt" is "cause" to dismiss the case under § 707(a)). As a result, given the absence of estate assets, the $7 million claim will remain almost totally unpaid.   Debtor will not receive a fresh start through this bankruptcy.   Bankruptcy courts have made clear that, where the purpose of Chapter 7 is thwarted because a debtor will not receive a fresh start, the case should be dismissed because it serves no purpose other than delay.  *See In re Barry*, 19 Fla. L. Weekly Fed. B 108 (U.S. Bankr. N.D. Fla 2005) ("Since almost all of the debts listed in this bankruptcy are excepted from discharge and there are no assets to be distributed to creditors, the question becomes what useful purpose will be served by the continuation of this case. The answer to that question is none.").

35.    The Court should examine the motive and purpose of the Chapter 7, in particular whether Debtor filed the case to achieve a 'fresh start,' in deciding whether the case should be dismissed under § 707(a):

> This requires an analysis of all of the facts and circumstances leading up to the filing of this case to include the debtor's motive in filing the case, the purposes which will be achieved in this case, and whether the debtor's motive

and purposes are consistent with the purpose of chapter 7, that is, to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets for liquidation for the benefit of the debtor's creditors.

This analysis starts with the fact that of the approximately $ 139,762,828.17 of debt listed in [Debtor's] schedules, $ 130,650,328.17 is owed on account of the nondischargeable debts owed . . . . Another $ 9 million is owed to the Internal Revenue Service which, subject to certain narrow exceptions, would be nondischargeable under Bankruptcy Code § 523(a)(1). It can reasonably be inferred from these facts that Bilzerian did not file this case to get a 'fresh start.'

*In re Bilzerian*, 258 B.R. 850, 857 (Bankr. M.D. Fla. 2001) (citations omitted).

36.     Here, Debtor filed this Chapter 7—his third bankruptcy in three years—even though he cannot pay creditors and cannot achieve a fresh start.  Even if a chapter 7 trustee were to generate some assets to pay creditors, Debtor would remain without the 'fresh start' contemplated by Chapter 7.  Thus, Debtor cannot achieve the proper purpose of Chapter 7 and the case should be dismissed.  Continuation of this case will result only in more delay and increased administrative costs.  The Court should dismiss the case.

37.     Finally, Debtor filed this case as an improper end-run around this Court's rulings that Debtor belonged outside of bankruptcy, not in Chapter 7.  The Court ruled in its Ruling Dismissing the First Case that "[i]t is in the best interest of the estate to dismiss." Ruling Dismissing the First Case at 19.  The Court adopted this analysis in its Ruling Dismissing the Second Case: "The court applies the same analysis from Debtor's first case . . . . it is in the best interest of the estate and creditors that the court dismiss the case." Ruling Dismissing the Second Case at 13–14.  When Debtor asked the Court to reconsider this ruling and convert the case instead, the Court rejected his argument and maintained

that dismissal, not conversion, was appropriate.  *See* Order Denying Motion to Alter at 3.

Four days later, and before his Chapter 11 case is closed, Debtor files this case.  Allowing

Debtor to continue in Chapter 7 just days after this Court held that his Chapter 7 should be

dismissed and not converted to Chapter 7 renders this Court's decisions on this issue

meaningless.  In filing this case, Debtor disregarded this Court's repeated rulings and

reasoning that dismissal—not conversion—was in creditors' best interest.  This is further

evidence of Debtor's improper purpose.

38.    Because Debtor filed this case in bad faith and cannot fulfil the purposes of

Chapter 7, the Court should dismiss this case for cause under § 707(a).  Based on the

authority and reasoning set out in Part III, the CWT Parties ask the Court that the dismissal

be with prejudice, barring Debtor from filing in this or any other jurisdiction for 180 days.

**II.    Debtor and His Other Creditors Are Barred by Res Judicata From Opposing Dismissal**

39.    The Court should also dismiss the case under the doctrine of res judicata.  In

its Ruling Dismissing the Second Case, the Court rejected the argument that Debtor's case

should be converted from a Chapter 11 to a Chapter 7, and instead held that "[i]t is in the

best interest of the estate to dismiss."  Ruling Dismissing the Second Case at 14.  Because

Debtor and creditors had the opportunity to oppose dismissal or urge conversion of the

Second Case but did not do so, the doctrine of res judicata should now bar them from

opposing dismissal of this case.  The Court should dismiss the case with prejudice.

40.    "'Under res judicata, or claim preclusion, a final judgment on the merits of

an action precludes the parties or their privies from relitigating issues that were or could

have been raised in the prior action.'" *Hawg Tools, LLC v. Newsco Int'l Energy Servs., Inc.*, 2018 WL 6653354, at *6 (10th Cir. Dec. 18, 2018) (citation omitted).

41.    Here, the Court entered a final judgment dismissing Debtor's second Chapter 11 case.  This dismissal was on the merits.  Debtor and all of his creditors had notice of the CWT Parties' motion to dismiss, and could have thus argued in favor of conversion to Chapter 7 instead of dismissal.  They did not do so.  As the Court noted in its Order Denying Motion to Alter, "Debtor never argued for conversion to Chapter 7 liquidation proceedings instead of dismissal before or during the hearing," and "[a]ll creditors had notice of CWT's Motion to Dismiss, yet none contested it or advocated for conversion to Chapter 7, rather than dismissal."  Order Denying Motion to Alter at 2.  Nor did any of Debtor's creditors join in Debtor's motion to alter or amend the judgment to allow for conversion to a Chapter 7 instead of dismissal.  Because Debtor and creditors had the opportunity to urge any positions to the Court as to why Debtor should be in Chapter 7, but did not take this opportunity, the Court's decision should have preclusive effect and bar such arguments now.

42.    Accordingly, Debtor and all of his creditors are now precluded from arguing that Debtor should be allowed to remain in Chapter 7.  *See In re Reynolds*, 2010 WL 4260026, at *2 (Bankr. D. Mass. Oct. 25, 2010) (res judicata precluded debtors' argument against conversion from chapter 11 to chapter 7 when debtors "could have *but did not*" make this argument when conversion order issued), *aff'd*, 455 B.R. 312 (D. Mass. 2011). The Court should reject any and all arguments about why Debtor should remain in Chapter 7 on this basis and dismiss the case with prejudice.

### III.    The Court Should Dismiss the Case with Prejudice and Bar Debtor from Filing for 180 Days

43.    If the Court dismisses the case, the dismissal should be with prejudice to and a bar to refiling bankruptcy in any jurisdiction for 180 days. Bankruptcy Code Section 349(a) provides:

> **Unless the court, for cause**, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; **nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title**, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a) (emphasis added).

44.    Section 109(g) provides:

> [N]o individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1)  the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2)  the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g).

45.    "In *In re Norton*, a bankruptcy court sitting in Utah made an exhaustive examination of the factors to be considered in applying § 349(a) and finding the requisite cause to make a dismissal order with prejudice." *Laine v. Gregory-Laine* (*In re Laine*), 383 B.R. 166, 176 (Bankr. D. Kan. 2008).  In *Norton*, the Court noted that "very little case law exists in the Tenth Circuit defining and developing the § 349(a) dismissal with

prejudice provision, or further defining what constitutes 'cause' for dismissal under § 349(a)." *Id.* at 674.

46.     The Court began by noting the difference between § 109(g) and § 349(a). Section 109(g) was enacted "to stop the filing of meritless petitions in rapid succession to improperly obtain the benefit of the Bankruptcy Code's automatic stay provisions as a means of avoiding foreclosure." *Id.* at 680 (internal quotation marks omitted) (quoting *Colonial Auto Ctr. v. Tomlin* (*In re Tomlin*), 105 F.3d 933, 937 (4th Cir. 1997)). Section 349(a), on the other hand, was for circumstances "when a debtor's conduct is more egregious." *Id.*

47.     Such egregious conduct showing "cause" to bar future filing under § 349(a) is determined by two factors "whether (1) the debtor demonstrated bad faith or defiance, and (2) whether the debtor's conduct was abusive or prejudicial to creditors." *Id.* at 681. Other Bankruptcy Courts in the 10th Circuit have used these factors in applying § 349(a). *See, e.g.*, *In re Guebert*, No. 07-41165, 2008 Bankr. LEXIS 1093, at *24 (Bankr. D. Kan. Apr. 11, 2008) ("As to the legal standards for dismissal with prejudice, in the Tenth Circuit two factors must coexist: (1) Bad faith or defiance; and (2) conduct which was abusive or prejudicial to creditors."). The *Norton* explained these factors as follows.

48.     In assessing "whether the debtor demonstrated bad faith or defiance":

Some courts have referred to this conduct as "contumacious" or a "pattern of evasion." This Court also chooses to label this conduct as defiant. The word "defiant" is defined as "bold resistance to an opposing force or authority." Although successive filings do not necessarily constitute defiant conduct, multiple filings may be evidence of such conduct, as is a debtor's continued failure to actively prosecute her bankruptcy cases.

*In re Norton*, 319 B.R. 671, 682–83 (Bankr. D. Utah 2005)

49.     In assessing "whether the debtor's conduct was abusive or prejudicial to creditors":

> A creditor is prejudiced when a debtor, through repeated filings, denies the creditor the opportunity to exercise its contractual rights because of the automatic stay. Abusive serial filing not only denies the creditor certain rights, it allows a "rapacious" debtor to use the automatic stay as a sword against its creditor: this is not the purpose of § 362.

*Id.* at 683–84.   This language and analysis have been quoted and followed by other Bankruptcy Courts in the 10th Circuit.   *See, e.g.*, *In re Hancock*, No. 15-10037-JDL, 2015 Bankr. LEXIS 874, at *17–19 (Bankr. W.D. Okla. Mar. 19, 2015); *In re Guebert*, 2008 Bankr. LEXIS 1093, at *25–27.

50.     Here, the background recounted above shows that Debtor has engaged in defiant and dishonest conduct and misused bankruptcy protection to avoid creditors, stall adverse litigation, and delay the consequences of his actions.   Debtors actions in and out of bankruptcy show a "pattern of evasion" and defiant conduct that is abusive or prejudicial to creditors.   This case is only the most recent example of such conduct.   The Court should bar Debtor from filing for 180 days.

51.     First, Debtor's egregious conduct demonstrates bad faith and defiance.   In the New York Action, the Court held that Debtor (a) deliberately violated an attachment order directing him to return the stolen Tax Credits; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft.   It also characterized Debtor as the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose"

relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court."

52.    In this Court, (1) Debtor was unable to effectuate a plan; (2) there was substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation; (3) Debtor had failed to meet filing and reporting requirements; (4) Debtor had failed to pay taxes; and, (5) Debtor lacked good faith in filing and administering the case.  Nevertheless, even though there had been no change in circumstances, Debtor filed a second case.  This Court ended up dismissing the Second Case for largely the same reasons as the first.  Debtor's multiple filings are further evidence of his defiant conduct. *Id.* at 683.  Finally, Debtor, like the chapter 13 debtor in *Norton*, "never made an effort to prosecute a plan in good faith, nor has there been any demonstrable change in her circumstances which might justify successive refiling." *Id.*

53.    Nearly the entire background of this case, recounted above, falls under this first factor.  Debtor's conduct exemplifies willful disregard of the legal system and misuse of the bankruptcy system.  Debtor has shown no hesitation about repeatedly filing bankruptcy cases in this and another jurisdiction to avoid his creditors and without any intention of following through on those cases.  The Court should bar Debtor from filing any bankruptcy case in any jurisdiction for 180 days.  Indeed, this is exactly what the Bankruptcy Court for the District of Arizona did in response to the Chapter 11 case brought by RDX Technologies Corporation—the corporation Danzik used to steal the CWT Parties' tax credits—which similarly could not confirm a plan (despite its efforts, unlike Debtor here) and used the bankruptcy process solely as a bad-faith effort to avoid the CWT

Parties' enforcement efforts. *See In re RDX Techs. Corp.*, Case No. 2:17-bk-14387-PS

(Bankr. D. Ariz.) (Nov. 28, 2018 Order).

54.     Second, Debtor's conduct was abusive or prejudicial to creditors.  Debtor

enjoyed bankruptcy protection for over a total of two years during his bankruptcy cases

before this Court without prosecuting a plan of reorganization.  In fact, Debtor has admitted

to "wisely" using bankruptcy protection to stop collection actions against him.  Response

to Motion to Dismiss, *In re Danzik*, Bankr. Case. No. 17-20934, Doc. 184 at 5 (Bankr. D.

Wyo. November 13, 2018) ("The Debtor has wisely used the protection of the automatic

stay in this case as well as the successor chapter 11 to get his income situation well

grounded, free of disruptive compulsory process, to advance his--and others—defensive,

legal claims . . . .").]  And Debtor characterizes his failure to submit a Chapter 11 plan as

"opt[ing], for now to forego the confirmation process." *Id.* at 4.  The Court, in dismissing

the second case, found that "Debtor is using the breathing space to avoid his financial

obligations" and that "Creditors' claims are on hold while Debtor parks in bankruptcy."

These statements, and the Courts' own findings about Debtor's conduct, shows that

Debtor's bankruptcy filings have been solely for the purpose of avoiding his creditors

without any intention of paying his creditors.  Thus, his conduct has been abusive or

prejudicial to creditors. *In re Norton*, 319 B.R. at 684 ("The failure to file a plan and the

timing of each filing demonstrates that this Debtor has not attempted to adjust and repay

her debts as Chapter 13 contemplates.  Rather, it demonstrates that she has abused the

purposes of the automatic stay . . . her 'sole purpose has been to frustrate and delay her

creditors.'"").  The Court should again find that Debtor's purpose in filing these cases has been to frustrate creditors and avoid his obligations.

55.     Because Debtor's conduct is egregious, demonstrates bad faith and defiance, and continues to be abusive or prejudicial to creditors, the Court should bar Debtor from filing for 180 days.  *See In re Sinischo*, 561 B.R. 176, 194 (Bankr. D. Colo. 2016) ("The Tenth Circuit, in *Frieouf v. United States* (*In re Frieouf*), 938 F.2d 1099, 1103-04 (10th Cir. 1991), held that under § 109(g), courts in this Circuit can bar a debtor from re-filing a petition for a maximum of 180 days."); *but see In re Norton*, 319 B.R. 671, 674 (Bankr. D. Utah 2005) ("[A] majority of courts have . . . affirmed lower courts' decisions that bar future access to the court beyond the § 109(g) 180-day limit.").

56.     Like the debtor in *Norton*, "[t]his Debtor has systematically manipulated the bankruptcy system and used it as her own personal shield from creditors' collection efforts."  *In re Norton*, 319 B.R. at 684.  The Court should follow *Norton* and make clear that "such abusive conduct cannot be condoned and will not be tolerated."  *Id.*  The Court should dismiss the case with prejudice.

## CONCLUSION

**WHEREFORE**, the CWT Parties ask the Court to dismiss this case with prejudice.

**FURTHER**, the CWT Parties ask the Court to bar Dennis Danzik from filing any bankruptcy case in any jurisdiction for 180 days.

Dated: Cheyenne, Wyoming
March 20, 2019

Respectfully submitted,

**CWT Canada II Limited Partnership and**

**Resource Recovery Corporation,** *Creditors and Movants*

By: */s/ Bradley T. Hunsicker*
Bradley T. Hunsicker, #7-4579
**MARKUS WILLIAMS YOUNG & HUNSICKER LLC**
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (307) 638-1975
E-Mail: bhunsicker@markuswilliams.com

*Attorneys for Creditors CWT Canada II Limited Partnership and Resource Recovery Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on March 20, 2019 *electronically,* via the Court's CM/ECF system upon the following parties who have entered their appearance in the above-captioned matter.

**Ken McCartney**
The Law Offices of Ken McCartney, P.C.
P.O. Box 1364
Cheyenne, WY 82003
bnkrpcyrep@aol.com
*Attorney for Debtor*

*/s/ Bradley T. Hunsicker*
Bradley T. Hunsicker