FILED

3:27 pm, 5/31/19

Tim J. Ellis
Clerk of Court

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re | ) |
| | ) |
| DENNIS MEYER DANZIK | )    Case No. 19-20116 |
| | )    Chapter 7 |
| Debtor(s). | ) |

## DECISION MEMORANDUM AND ORDER DENYING
## DEBTOR'S REQUEST TO CONTINUE THE AUTOMATIC STAY
## PURSUANT TO 11 U.S.C. § 362(c)(3)(A) & (B)

Debtor Dennis Danzik filed a request to continue the automatic stay in his now pending Chapter 7 bankruptcy case. Creditors CWT Canada II Limited Partnership and Resource Recovery Corporation (CWT Parties) objected. Debtor requests the court continue the stay, which terminates under Section 362(c)(3)(A). The CWT parties argue the court should not extend the stay as Debtor did not: 1) rebut the presumption that he filed the Chapter 7 case in bad faith or 2) set out with any particularity why the court should extend the stay. The court held the evidentiary hearing on April 18, 2019, and took the matter under advisement. Having reviewed the record, the court denies the request.

### Jurisdiction

The court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.[1]

### Background

Debtor filed his first Chapter 11 bankruptcy case on January 4, 2016.[2] The court dismissed on March 8, 2017. He filed the second Chapter 11 case on December 6, 2017, which the court dismissed March 6, 2019.[3] Debtor filed the pending Chapter 7 bankruptcy case on March 12, 2019. During Debtor's second Chapter 11, this court found in favor of the CWT Parties and found its debt non-dischargeable.

---

[1] All citations, unless otherwise noted, are to the United States Code, title 11.
[2] *In re Danzik*, Case No. 16-20002 (Bankr. Wyo. January 4, 2016).
[3] *In re Danzik*, Case No. 17-20934 (Bankr. Wyo. December 6, 2017).

## Discussion

A presumption Debtor filed a petition in bad faith as to all creditors arises in three situations: 1) if Debtor had more than one case pending during the year before the current case; 2) if a prior case was dismissed due to Debtor's failure to file or amend certain documents, provide court-ordered adequate protection, or perform under a confirmed plan; or 3) if there has been no substantial change in the debtor's financial condition since the dismissal of the most recent previous case.[4] If the presumption arises, Debtor must rebut the presumption by "clear and convincing evidence" in order to continue the automatic stay.[5]

Debtor, an individual, had a pending bankruptcy case within the preceding one-year, which the court dismissed. Debtor commenced a voluntary Chapter 11 case on December 6, 2017, case number 17-20934, in the same judicial district. The case was dismissed on March 6, 2019. Debtor filed this case 34 days after the Chapter 11 was dismissed; hence one case was pending within the year preceding the filing of Debtor's Chapter 7 case. As a party in interest,

---

[4] Section 362(c)(3) provides, as relevant:

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)–

  (A)   the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt . . . shall terminate with respect to the debtor on the 30th day after the filing of the later case;

  (B)   on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors . . . only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

  (C)   for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

        (i)      as to all creditors, if—

                (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

                (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—

                        (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

                        (bb) provide adequate protection as ordered by the court; or

                        (cc) perform the terms of a plan confirmed by the court; or

                (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case. . . or any other reason to conclude that the later case will be concluded—

                        (aa) if a case under chapter 7, with a discharge; or

                        (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

        (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor. . . .

[5] Section 362(c)(3)(B).

Debtor requested to continue the automatic stay scheduled to terminate within 30-days of his Chapter 7 petition date of March 12, 2019.

The court may extend the stay only if the moving party demonstrates filing the latter case is in good faith as to the creditors to be stayed.[6] Note that, under Section 362(c)(3), whether or not the presumption that the case was not filed in good faith arises, a debtor still has the burden to show that he filed the case in good faith. The difference is which standard of proof applies.

Whether Debtor's later case was presumptively not filed in good faith under Section 362(c)(3)(C) is crucial because it determines the burden Debtor must meet to prevail on his motion to extend the automatic stay. If the presumption arises, Debtor must rebut the presumption with clear and convincing evidence.[7] If the presumption does not arise, Debtor "need only show that the current case was filed in good faith under the less demanding preponderance of the evidence standard."[8]

I.    Does the presumption arise?

1)  *Debtor admits the later bankruptcy was presumptively filed in bad faith as to certain creditors.*

Debtor concedes the later bankruptcy was presumptively filed in bad faith as to several individual creditors who filed for relief from the automatic stay, but nevertheless asks the Court to extend the stay as to "all claimants."[9]

2)  *Substantial change in Debtor's financial or personal affairs*

The CWT Parties argue Debtor presumptively did not file the case in good faith as to all creditors because there is not a substantial change in Debtor's financial or personal affairs since the court dismissed the Chapter 11.[10] A case is presumptively not filed in good faith as to all creditors if "there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13."[11] Debtor bears the burden of proof to show a change of financial circumstances.[12]

---

[6]  Section 362(c)(3)(C).
[7]  *In re Fisher*, No. 18-10343, 2018 WL 6075611, at *6 (Bankr. D. Vt. Nov. 20, 2018) (quoting Collier on Bankruptcy ¶ 362.06(3)(b)).
[8]  *In re Fisher*, 2018 WL 6075611, at *6.
[9]  See Motion, Case No. 19-20116, ECF No. 11, p. 2, § 4.
[10]  Section 362(c)(3)(C).
[11]  Section 362(c)(3)(C)(i)(III).
[12]  *In re Nutter*, No. 09-34827-H3-13, 2009 WL 2824866, at *3 (Bankr. S.D. Tex. Aug. 31, 2009) (citing *In re Charles*, 334 B.R. 207 (Bankr. S.D. Tex. 2005)).

Debtor responds there is a substantial change in his financial affairs given the Restraint Notice the CWT parties filed: "The substantial change in the Debtor's financial circumstance that justifies the good faith of his action in filing this case, is simply the restraint by one creditor in presence of many creditors. Why should one creditor, the objecting party, be allowed an advantage over all other creditors when the chapter 7 process provides an alternative?" Debtor did not provide other evidence regarding his financial condition from the time of the dismissal of the Chapter 11 case from which the court can conclude that a substantial financial change occurred with Debtor's assets or liabilities between the time the prior case was dismissed, and the time Debtor filed the instant Chapter 7 case.

Debtor argues the CWT Parties' filing of a Restraining Notice on U.S. Bank in New York preventing Debtor from transferring his accounts requires the Trustee to collect or use its avoidance power to allow a pro-rata distribution to all creditors. A creditor enforcing its judgment is not a substantial change in Debtor's financial affairs.[13] The *Cox* court considered the totality of circumstances surrounding the debtors and found they did not rebut the presumption that their case was not filed in good faith by clear and convincing evidence when the only changed circumstance was that a creditor had repossessed some of debtors' equipment.[14] Creditors in that case had just enough time following dismissal of the last case to file replevin actions and repossess some of their collateral.[15]

Given: 1) Debtor's admission the presumption arises, and 2) Debtor's failure to establish a substantial change in his financial or personal affairs, the court finds for purposes of applying Section 362(c)(3)(B), the presumption has arisen under Section 362(c)(3)(C)(i)(III), requiring Debtor rebut the presumption with clear and convincing evidence.

II.    Rebutting the presumption

Mr. Danzik offers the following as "contradiction of the bad faith presumption:" a) the Chapter 7 filing is intended "to avoid a prepetition caesura either by the trustee's collection or avoidance powers to allow a pro-rata distribution to several effected creditors"; b) the case is intended to pay 100% of Debtor's federal income tax liability; c) the Internal Revenue Service will not be paid in full "with the interruption" of Debtor's accounts between dismissal of the

---

[13] *See In re Cox*, No. 17-80820-TRC, 2017 WL 3447116, at *3 (Bankr. E.D. Okla. Aug. 9, 2017).
[14] In *re Cox* 2017 WL 3447116, at *3.
[15] *Id.*

Chapter 11 case and filing of the Chapter 7 case; d) judgment creditors, [*i.e.*, the CWT Parties] vigorously challenged Debtor's livelihood at the time he filed the Chapter 7 petition; and e) it is not bad faith when Debtor expects a 100% tax claim payment in Chapter 7.

The court finds that the combined factors the Utah Bankruptcy Court used in *Galanis* is appropriate for a Section 362(c)(3)(B) analysis.[16] These factors include: 1) the timing of the petition; 2) how the debt(s) arose; 3) Debtor's motive in filing the petition; 4) how Debtor's actions affected creditors; 5) why Debtor's prior case was dismissed; 6) the likelihood that Debtor will have a steady income throughout the bankruptcy case, and will be able to properly fund a plan; and 7) whether the Trustee or creditors object to the debtor's motion.

1) *Timing of the petition.*

Mr. Danzik filed three bankruptcy cases in three years in the District of Wyoming. He also filed in Arizona on behalf of RDX Technologies, filed December 23, 2015.[17] As stated, Debtor filed this chapter 7 bankruptcy case 34 days after the court dismissed his prior Chapter 11. Increasing debt over time with no intent to stay out of bankruptcy can indicate bad faith.[18] A shorter time frame favors good faith because it's less likely that creditors have incurred additional collection expenses or that collateral has significantly depreciated. This case shows the contrary where the CWT parties did in fact incur greater collection expenses, and as explained by the court in the previous dismissals, Debtor has not demonstrated sufficient assets for a meaningful distribution to unsecured creditors, so depreciation is not a factor. In Debtor's previous bankruptcy, the IRS filed a claim showing just over $56,000.00 owed for priority claims. That amount has now increased to almost $1.5 million. Debtor still shows outstanding returns for 2016 through 2018. He asserts he filed these, but the IRS has not processed them. Given Debtor's history, the court expects the liability to increase further upon the processing of filed returns.

2) *How the debt(s) arose.*

Courts consider whether the debts were beyond Debtor's control – e.g., through profligate spending as opposed to unavoidable medical expenses.[19] Throughout Debtor's

---

[16] *In re Galanis*, 334 B.R. 685, 693 (Bankr. D. Utah, 2005).
[17] Case Number 1:15-bk-15859-PS. RDX filed a second bankruptcy, Case No. 2:17-bk-14387, in the District of Arizona on December 6, 2017. Tony Ker filed the second case.
[18] *See In re Galanis,* 334 B.R. at 695.
[19] *In re Montoya,* 333 B.R. 449, 459 (Bankr. D. Utah 2005).

bankruptcy filings, the same debts exist. These include the CWT Parties, Internal Revenue Service, Richard Rofe, (secured creditor on mortgage for residence), unsecured debt for credit cards, judgments and "disgruntled RDX shareholder." The claims do not reflect unavoidable medical expense, but a failure to pay taxes and judgments due to Debtor's conduct.

3) *Debtor's motive in filing the petition.*

In the Danzik case, he admits the purpose of filing the Chapter 7 case was to recover the funds held by U.S. Bank because the CWT Parties filed a Restraint Notice, which will ultimately result in payment to administrative expenses and the IRS, if recovered. Mr. Danzik testified it was the "legal right to get debts discharged, creditors paid – the tax liability." Debtor's response to the CWT Parties' asserts the reasons for filing bankruptcy included protection provided by the automatic stay and knowledge that the Chapter 7, was the "price that has to be paid for an orderly chapter-wise disposition of assets."[20]

Debtor is not attempting to save his home as he stipulated to relief for creditors to foreclose on the home in the previous bankruptcy. He is not attempting to pay down all his debt – he intends to pay down his IRS debt with little or nothing to his unsecured creditors to whom he owes millions. There is no need for an orderly disposition of assets when the only creditor who may receive any funds is the IRS and it is well-situated to preserve its rights outside of bankruptcy.

4) *How Debtor's actions affected creditors.*

It is clear Debtor's three bankruptcy filings impeded all creditor's efforts to enforce their rights. Multiple creditors spent a great deal of time and incurred substantial attorneys' fees litigating against Debtor in the previous bankruptcy proceedings and related state-court proceedings. The length of time Debtor has spent in bankruptcy exacerbates the prejudice to creditors – having now spent 31 months of the last 41months in bankruptcy.[21]

The court recently granted relief to a creditor to recover a vehicle Debtor had not made any payments towards since he first filed bankruptcy in 2016. Creditors filed duplicate motions for relief and adversaries each time Debtor filed a new case. No creditor received a distribution during either Chapter 11 case, but Debtor benefitted with the use of collateral without

---

[20] ECF. No. 35, p. 4.
[21] Debtor's First Chapter 11 was open one year, two months, five days; Second Chapter 11 was open one year, two months; and the pending Chapter 7 has been open spent two months, 18 days. (Dates calculated through May 30, 2019.)

compensating creditors. Debtor has been in bankruptcy approximately 31 of 41 months, enjoying the benefits of the automatic stay, while not submitting a confirmable plan or providing payment to creditors. As addressed, Debtor has still not resolved his IRS liability, which has increased over time to the detriment of other creditors. Debtor's actions have had a huge delay in paying creditors and an extreme negative impact. Debtor did not provide clear and convincing evidence regarding this factor to extend the stay.

　　5) *Why Debtor's prior case was dismissed*

　　Courts weighing this factor focus on whether the court dismissed Debtor's prior case because of Debtor's "attempts to manipulate the system or some other bad conduct."[22] Debtor bears the burden "to offer some reasonable assurance that whatever caused the dismissal of the prior case will not repeat in the current case."[23] This is difficult to apply when much of Debtor's conduct was relevant to a Chapter 11 case and not a Chapter 7 case.

　　　　a.　First case dismissed.

　　The court dismissed Debtor's first Chapter 11 because: 1) he was unable to effectuate a plan; 2) there was substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation; 3) he failed to meet filing and reporting requirements; 4) he failed to pay taxes; and, 5) Debtor lacked good faith in filing and administering the case.[24]

　　　　b.　Second Case dismissed.

　　The court dismissed Debtor's second case, finding he: 1) grossly mismanaged the estate by failing to timely file monthly operating reports, 2) was not able to effectuate a confirmable plan; and 3) filed this case in bad faith.[25] In finding Debtor filed the case in bad faith, the court found: "Debtor is using the breathing space to avoid his financial obligations. He has not argued nor demonstrated he is using it to rehabilitate any business."[26] Further, the court quoted its Order Dismissing the First Case: "Debtor's circumstances have not changed. The CWT litigation continues, and Creditors' claims are on hold while Debtor parks in bankruptcy."[27] In short, the

---

[22] *In re Galanis*, 334 B.R. 685, 696 (Bankr. D. Utah 2005).

[23] *In re Goodrich*, 591 B.R. 538, 552 (Bankr. D. Vt. 2018), *amended,* No. 17-10500, 2018 WL 6975201 (Bankr. D. Vt. Oct. 25, 2018) (quoting *In re Carr*, 344 B.R. 776, 781 (Bankr. N.D. W.Va. 2006)).

[24] *In re Danzik*, Case No. 16-20002, ECF No. 393 (Bankr. D. Wyo. March 8, 2017).

[25] *In re Danzik*, Case No. 17-20934, ECF No. 201, p. 15 (Bankr. D. Wyo. February 6, 2019).

[26] *Id*. at 10-11.

[27] *Id*. at 12.

court concluded Debtor again filed in bad faith and misused bankruptcy protection to avoid his creditors and stall litigation.[28]

If the court dismissed the prior case because of Debtor's attempts to manipulate the system or some other bad conduct, that would bear on whether Debtor filed the present case in good faith.[29] The court dismissed both cases, in part, because of Debtor's failure to comply with filing requirements. In both cases, the court also found Debtor filed the case in bad faith and was using the automatic stay without a bankruptcy purpose other than to stall his creditors. Debtor has not demonstrated a change of circumstances that would give this court reason to believe that he is now moving forward with a legitimate bankruptcy purpose other than stalling creditors.

The court also notes Debtor did not ask the court to convert, in the alternative, in the most recently dismissed Chapter 11 bankruptcy case until after the court granted dismissal and the CWT Parties issued the Restraint Notice. The court chose not to convert as it found it was in the best interest of the estate to dismiss. "Any liquidation would be for the sole benefit of the IRS. A liquidation bankruptcy case is not administered for the benefit of a debtor's secured creditors but for the benefit of its unsecured creditors."[30]

The CWT Parties allege Debtor's past performance compels the conclusion Debtor did not take seriously the obligations imposed on him by either the New York Court or the dismissal orders entered in his chapter 11 cases. The Debtor did not introduce any evidence that contradicts these allegations. Like his previous cases, Debtor has not demonstrated any meaningful effort to resolve the IRS liability other than to declare he filed the returns.

The reasons Debtor's cases were dismissed, weigh heavily in not extending the stay.

6)  *Likelihood that the debtor will have a steady income throughout the bankruptcy case and will be able to properly fund a plan.*

This factor is not applicable.

7)  *Whether the Trustee or creditors object to Debtor's motion.*

The *Galanis* court described the importance of the trustee's position to "sniff out a debtor's bad faith."[31] Likewise, the absence of any objection filed by a creditor is also relevant to show that the debtor filed in good faith.[32] At the time the matter was before the court, Debtor had

---

[28] *Id.*

[29] *In re Galanis*, 334 B.R. 685, 696 (Bankr. D. Utah 2005).

[30] *In re Danzik*, Case No. 17-20934, ECF No. 201, at 13-14.

[31] *In re Galanis*, 334 B.R. at 696.

[32] *Id.*

not attended a Section 341 meeting of creditors. The Trustee may be without sufficient information to respond. The Trustee continued the meeting a second time replicating the delay the court saw in previous cases. [33]

The CWT parties did file an objection, which weighs against extending the stay. Debtor's three bankruptcy filings have impeded the CWT Parties' efforts to enforce its rights and it has spent a great deal of time and incurred substantial attorneys' fees in litigation against Debtor in the bankruptcy proceedings. In light of the weight of the presumption, the strength of the CWT Parties' objection, and the Debtor's failure to refute most of the allegations in the objection, this factor weighs against the Debtor.

III. Totality of the Circumstances

The articulated factors are not necessarily weighted, nor are they exhaustive, and in the end the court looks at the totality of the circumstances. It is important to note that Section 362(c)(3)(B) requires this court to view this issue from all creditors' perspective. Because of this, the court awards more weight to factor that establishes Debtor's repeat filings have negatively affected creditors. Debtor needed to come forward with clear and convincing evidence showing the negative impact on the creditors has now somehow been overcome. Instead, Debtor focused on his intent to pay the IRS in full, which inherently negatively affects the CWT Parties. This is insufficient to rebut the presumption because the objective evidence before the Court shows that most, if not all creditors received no payments at all for at least 42 months, their pre-filing collection rights have been stayed since the First Chapter 11, some creditor's collateral has depreciated, and creditors are not treated any better under a Chapter 7 than the previous Chapter 11 cases.

**Conclusion**

Considering the totality of the circumstances, Debtor did not provide clear and convincing evidence he filed his Chapter 7 case in good faith to extend the stay. The court finds Debtor's allegations in the Motion are not supported by the testimony and evidence nor do they consider the impact on all creditors. The court will not grant the Motion to extend the stay.

---

[33] According to the docket the Trustee filed a Statement Adjourning the Meeting of 341(a) Meeting of Creditors on May 21, 2019 and a second on May 21, 2019 continuing the matter to June 25, 2019. No other information is available.

IT IS ORDERED Debtor's Motion to Extend the Stay is DENIED.

BY THE COURT

5/31/2019

Honorable Cathleen D. Parker
United States Bankruptcy Court
District of Wyoming