FILED

3:55 pm, 6/24/19

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| DENNIS MEYER DANZIK ) | Case No.  19-20116 |
| ) | Chapter 7 |
| Debtor. ) | |

**DECISION MEMORANDUM ON
MOTION TO DISMISS CHAPTER 7 CASE WITH PREJUDICE**

CWT Canada II Limited Partnership and Resource Recovery Corporation (CWT Parties) filed the above-captioned Motion requesting the court dismiss Debtor Dennis Meyer Danzik's chapter 7 bankruptcy case for cause on the basis Debtor filed this case in bad faith, inconsistent with the purpose of Chapter 7 and allowing Debtor to proceed renders this court's repeated decisions on dismissal versus conversion meaningless. Debtor argues bad faith is not cause to dismiss in a Chapter 7 case and his desire for a fresh start is the reason for filing the Chapter 7 case. The hearing occurred May 15, 2019. The court reviewed the pleadings, testimony and exhibits and shall grant the Motion.

**Jurisdiction**

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C.§ 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The CWT Parties bring this Motion under 11 U.S.C. §§ 707(a), 349 and 109(f).[1]

**Facts**

Prior to filing his first voluntary petition, Debtor was in litigation with the CWT Parties. The CWT Parties were Defendants and Counterclaim/Cross-Claim/Third Party Plaintiffs in a pending action in the Supreme Court of the State of New York, County of New York, Commercial Division, captioned *GEM Holdco LLC, et. al. v. Changing World Technologies, L.P., et al.*[2] The cross-claim between CWT Parties and Debtor involved tax credits issued in the name of Renewable Environmental Solution, LLC, which was under the control of RDX

---

[1] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. All future references to "Bankruptcy Rule" or "Rule" are to the Federal Rules of Bankruptcy Procedure.
[2] New York Sup. Ct., Index No. 650841/2013.

Technologies Corporation and controlled by Debtor. On the eve of filing his voluntary Chapter 11 petition on January 4, 2016 (First Case), the New York Court ruled that the tax credits do not belong to Debtor and had held a hearing to address whether it should hold him in contempt. The CWT Parties requested relief from the automatic stay to allow the New York Court to enter its order, which this court granted.[3]

After the court granted relief,[4] the New York court entered its formal entry of judgment fixing liability against Debtor and issued a written contempt decision. Throughout the New York Court proceedings, it found: 1) Debtor ignored countless court orders with absolutely no regard for the court's authority;[5] 2) Debtor was the epitome of a recalcitrant, contemptuous, and incorrigible litigant whose pleadings deserved to be stricken;[6] and 3) the court's sanctions were necessary, "to preserve the integrity of the court."[7] The CWT Parties obtained a judgment in the amount of $7,033,491.13 against Debtor in the New York action.

This court found "cause" to dismiss the First Case under Section 1112(b) based on the following: 1) Debtor was unable to effectuate a plan; 2) there was substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation; 3) Debtor failed to meet filing and reporting requirements; 4) Debtor failed to pay taxes; and, 5) Debtor lacked good faith in filing and administering the case.[8] In addition, the court addressed whether dismissal or conversion was in the best interest of creditors and concluded that the case should be dismissed, not converted.[9] Debtor's First Case lasted over fourteen months.

Almost nine-months after the court dismissed the First Case, Debtor filed his Second Chapter 11 petition.[10] The CWT Parties moved to dismiss the Second Case, and after an evidentiary hearing, the Court found cause to dismiss under Section 1112(b)(1).[11] The court found the CWT Parties showed: "Debtor 1) is grossly mismanaging the estate by failing to

---

[3] *In re Danzik*, Case No. 16-20002 (Bankr. D. Wyo. 2016).
[4] *GEM Holdco LLC, et al., v. Changing World Technologies, L.P., et al.* (Sup. Ct. N.Y.), Index No.: 650841/2013.
[5] *GEM HOLDCO, LLC and GEM VENTURES LTD., v. Changing World Technologies, L.P.*, et al, Case No 650841/2103, Doc. No. 926 , p.11  (Sup. Ct. N.Y.: Part 54, February 4, 2019).
[6] *Id*. at 11 (citing Doc. 614 at 12).
[7] *Id.* (citing Doc. 597 11/4/15 Tr. at 71).
[8] See *Order on Sigma Opportunity Fund II, LLC's Motion to Dismiss, In re Danzik*, Case No. 16-20002, Doc. 393 *passim* (Bankr. D. Wyo. March 8, 2017).
[9] *Id*. at 19.
[10] *In re Danzik,* Case No. 17-20934 (Bankr. D. Wyo., Dec. 6, 2017).
[11] See *Decision Memorandum on CWT's Motion to Dismiss, In re Danzik*, Bankr. Case. No. 17-20934, Doc. 201 (Bankr. D. Wyo. February 6, 2019).

timely file monthly operating reports, 2) is not able to effectuate a confirmable plan; and, 3) filed this case in bad faith."[12] In finding Debtor filed the case in bad faith, the court found: "Debtor is using the breathing space to avoid his financial obligations. He has not argued nor demonstrated he is using it to rehabilitate any business."[13] Further, the court quoted its Order dismissing the First Case, concluding "Debtor's circumstances have not changed. The CWT litigation continues, and Creditors' claims are on hold while Debtor parks in bankruptcy."[14]

In its Order dismissing the Second Case, the court again addressed whether dismissal or conversion was in the best interest of creditors and expressly followed the First Case's Dismissal Order:

> CWT requests dismissal rather than conversion. Mr. Danzik's exempt assets would only be available to the IRS and secured creditors, leaving no assets for a trustee to administer. There is no pending litigation that would benefit a Chapter 7 estate. The court applies the same analysis from Debtor's first case:
>
>> It is in the best interest of the estate to dismiss. Any liquidation would be for the sole benefit of the secured creditors. A liquidation bankruptcy case is not administered for the benefit of a debtor's secured creditors but for the benefit of its unsecured creditors.

Thereafter, Debtor filed a Motion for Alteration or Amendment of an Order in the Second Case. Debtor asked the Court to alter its judgment and convert the Second Case to Chapter 7, instead of dismissing it. The Court denied the Motion, stating:

> Debtor never argued for conversion to Chapter 7 liquidation proceedings instead of dismissal before or during the hearing. While Debtor repeatedly asserted creditors would be better served by proceedings in bankruptcy court rather than collection actions in state court, these arguments were brought in the context of his attempts to remain within Chapter 11 proceedings. All creditors had notice of CWT's Motion to Dismiss, yet none contested it or advocated for conversion to Chapter 7, rather than dismissal.[15]

The court dismissed the Second Case but did not close it because the CWT Parties moved for and were granted its request for the pending adversary to proceed to conclusion. The court entered judgment in favor of the CWT Parties in their non-dischargeability claim.[16] The court

---

[12] *Id.* at 15.
[13] *Id.* at 10–11.
[14] *Id.* at 12.
[15] *Order Denying Motion to Alter or Amend Court's Order, In re Danzik*, Case. No. 17- 20934, Doc. 211 at 2 (Bankr. D. Wyo. March 8, 2019).
[16] *Memorandum Decision and Order Granting in Part and Denying in Part, CWT Parties' Motion for Partial Summary Judgment,* Bankr. No. 17-20934, Adv. No. 18-02007, Doc. 38 at 10 (Bankr. D. Wyo. March 18, 2019).

held the $7,033,491.13, judgment obtained against Debtor in New York State Court in *GEM Holdco LLC, et al., v. Changing World Technologies, L.P., et al.,* is non-dischargeable:

> The New York Court held that Danzik committed fraud, breached his obligations pursuant to a constructive trust, and that Danzik stole the CWT Parties' funds. Danzik may not re-litigate issues that the New York Court already adjudicated. The Judgment is non-dischargeable as a matter of law under Sections 523(a)(2) and (a)(6).

Debtor then filed this voluntary Chapter 7 petition.

After Debtor filed this Chapter 7 case, he filed a motion to extend the automatic stay. The court found, "Debtor did not provide clear and convincing evidence he filed his Chapter 7 case in good faith to extend the stay. The court finds Debtor's allegations in the Motion are not supported by the testimony and evidence nor do they consider the impact on all creditors."[17]

The CWT Parties did not present any witness or exhibits, but relied on briefs, the Section 707(a) factors; and Debtor's bankruptcy history. Debtor presented testimony from Anthony Ker, a business relation of eight to nine years; Bill Hinz, Inductance Energy, Chairman and CEO (a former employer);[18] and Mr. Danzik. Debtor submitted one exhibit.

**Analysis**

The CWT Parties request the court dismiss Debtor's Chapter 7 bankruptcy case as 1) Debtor filed the case in bad faith and without proper purpose; and 2) *res judicata* bars his filing. Additionally, the CWT Parties seek dismissal with prejudice barring Debtor from refiling a bankruptcy case for 180 days.

Determining whether cause exists to dismiss a case under Section 707(a) lies within the sound discretion of the court.[19] The Code does not define cause, but courts considering dismissal agree that it at a minimum requires Debtor's creditors not be prejudiced.[20] They also have broad authority to determine what constitutes "cause" to dismiss a Chapter 7 case.[21] Bankruptcy courts should not use "bad faith" as "a loose cannon which is to be pointed in the direction of a debtor

---

[17] DE 69, p. 10 (Bankr. D. Wyo. May 31, 2019).
[18] Mr. Danzik testified he works for Inductance but has not received a pay check since mid-January, as he "does not want to be a burden." Debtor's Schedule I indicates he is employed by Sulfur Creek Holdings, LLC from July 2018 to present, with a gross monthly income of $50,000.00, but is "currently in contract suspense."
[19] *In re McGuire-Pike*, No. 14-13365 ta7, 2015 WL 4181019, at *4–5 (Bankr. D.N.M. 2015) (citing *Gilboy v. Reukema* 610 Fed. Appx. 17 (2d. Cir. 2015)).
[20] *In re Asset Resolution Corp.*, 552 B.R. 856, 862 (Bankr. D. Kan. 2016).
[21] *In re Krueger*, 812 F.3d 365 (5th Cir. 2016) (citing 11 U.S.C.A. § 707(a)).

whose values do not coincide precisely with those of the court."[22] Dismissal for bad faith is appropriate when there is a clear record of a debtor's delay and contumacious conduct.[23]

A. Burden of Proof

The burden of proof is upon the moving party to show cause for dismissal of this case by a preponderance of the evidence.[24] When a party questions Debtor's good faith in filing for bankruptcy protection and has met the burden of showing cause for dismissal, the burden shifts to Debtor to prove good faith.[25]

B. Section 707(a)

The Bankruptcy Code provides:

> The court may dismiss a case under the chapter only after notice and a hearing and only for cause, including –
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee. . . .[26]

The enumerated grounds for a "for cause" are illustrative rather than exhaustive, but courts are not in agreement as to whether these enumerated grounds allow "bad faith" as cause for dismissal.[27] The Tenth Circuit has not addressed whether a court can dismiss a Chapter 7 case on bad faith grounds. Bankruptcy courts within the Tenth Circuit and other Circuits have and held even though bad faith is not an enumerated factor constituting "cause" for dismissal under Section 707(a), evidence of a debtor's "bad faith" in filing a Chapter 7 case is cause for dismissal.[28] Another recognized non-enumerated ground for dismissal under Section 707(a) is

---

[22] *In re McGuire-Pike*, 2015 WL 4181019, at *4–5 (citing *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994) (quoting *Sinkow v. Latimer* (*In re Latimer*), 82 B.R. 354, 364 (Bankr. E.D. Pa. 1988)).
[23] *In re Martin-Trigona*, 35 B.R. 596, 601 (Bankr. S.D.N.Y. 1983).
[24] *In re Bushyhead*, 525 B.R. 136, 137 (Bankr. N.D. Okla. 2015).
[25] *In re Lombardo*, 370 B.R. 506, 513 (Bankr. E.D.N.Y. 2007).
[26] Section 707(a).
[27] *In re Bushyhead*, 525 B.R. at 142.
[28] *See In re Asset Resolution Corp.*, 552 B.R. at 863; *In re Bushyhead*, 525 B.R. at 146; *In re McGuire-Pike*, 2015 WL 4181019, at *8; *In re Zick*, 931 F.2d 1124, 1126 (6th Cir.1991); *Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364, 369 (3d Cir. 2007).

lack of a legitimate bankruptcy purpose.[29] Although not controlling, the cases appear persuasive to this court's analysis.

To determine whether a debtor filed a chapter 7 case in bad faith, courts review the totality of the circumstances.[30] Debtor's pre-petition conduct, including his past bankruptcy filings, is relevant to the court's good faith analysis.[31] Each debtor's circumstances are unique, and the proper weight to give each fact necessarily depends on all the other facts presented.[32] The Bankruptcy Court for the Northern District of Oklahoma relied upon the Eleventh Circuit which characterized the totality of the circumstances test for bad faith under Section 707(a) as:

> The totality-of-the-circumstances inquiry looks for atypical conduct, that falls short of the honest and forthright invocation of the [Bankruptcy] Code's protections. In making that determination, bankruptcy courts must, as they so often do, sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done. Under this inquiry, bad faith ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.[33]

Bankruptcy courts have identified sixteen factors to consider in the totality-of-the-circumstances analysis: 1) whether Debtor's manipulations (if any) had the effect of frustrating one particular creditor; 2) the absence of an attempt to pay creditors; 3) Debtor's failure to make significant lifestyle changes; 4) whether Debtor has sufficient resources to pay a substantial portion of debts; 5) whether Debtor inflated expenses to disguise financial well-being; 6) whether Debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors; 7) whether Debtor reduced his creditors to a single creditor in the months prior to filing his petition; 8) whether Debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle; 9) whether Debtor filed the case in response to a judgment in pending litigation; 10) the unfairness of using Chapter 7; 11) whether Debtor is paying debts to insiders; 12) whether Debtor transferred assets; 13) whether Debtor employed a deliberate and persistent pattern of

---

[29] *In re Asset Resolution Corp.*, 552 B.R. at 862-63; s*ee also Asociación de Titulares de Condominio Castillo*, 581 B.R. 346, 357–58 (B.A.P. 1st Cir. 2018); *Kelley v. Cypress Fin. Trading Co.* (*In re Cypress Fin. Trading Co.*), 620 Fed.Appx. 287, 289 (5th Cir. 2015); *M.P. Constr. Co. v. Wong* (*In re M.P. Constr. Co.*)*,* No. CC–12–1306–DKiPa, 2013 WL 829117, at *5 (B.A.P. 9th Cir. Mar. 4, 2013).
[30] *In re Quinn*, 490 B.R. 607, 618 (Bankr. D.N.M. 2012).
[31] *In re Brown*, 399 B.R. 162, 169 (Bankr. W.D. Va. 2009).
[32] *In re Kane & Kane*, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009).
[33] *In re Bushyhead*, 525 B.R. 136, 146 (Bankr. N.D. Okla. 2015) (internal quotation marks and citations omitted) (emphasis added) (alterations in original).

evading a single major creditor; 14) whether Debtor failed to make candid and full disclosure; 15) whether the debts are modest in relation to assets and income; and 16) whether there are multiple bankruptcy filings or other procedural gymnastics.[34]

The CWT Parties rely upon Nos. 1, 2, 6, 9, 13, and 16.

Factor 1.  *Whether Debtor's manipulations (if any) had the effect of frustrating one particular creditor*

Debtor filed the First Case during the pendency of contempt proceedings in the New York court against Debtor in favor of the CWT Parties. The CWT Parties pursued Debtor throughout his bankruptcy cases, here and in Arizona.[35] Debtor filed his Second Case shortly after the CWT Parties took steps to enforce the contempt order. Debtor filed Chapter 7 after the CWT Parties attempted to collect on its judgment. Debtor's manipulation frustrated the CWT Parties. This factor weighs in favor of the CWT Parties.

Factor 2.   *The absence of an attempt to pay creditors*

Throughout Debtor's bankruptcy filings in Wyoming, he failed to get a plan confirmed in the First Case. He chose to "opt-out" of presenting a plan in the Second Case. During the entire time Debtor was a Chapter 11 Debtor-in-possession, creditors did not receive any payment. Debtor has not attempted to pay the Internal Revenue Service, CWT Parties or other secured or unsecured creditors. This factor weighs in favor of the CWT Parties.

Factor 6. *Whether Debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors*

Throughout the pendency of Debtor's chapter 11 cases, he enjoyed the benefits of the Code's automatic stay. During this time his actions were a detriment to creditors, as none received payments on their claims for at least 41 months. In dismissing the Second Case, the court explained: "Debtor's circumstances have not changed. The CWT litigation continues, and

---

[34] *In re McGuire-Pike*, No. 14-13365 ta7, 2015 WL 4181019, at *5-6 (Bankr. D.N.M. July 10, 2015) (citing *In re Lombardo,* 370 B.R. 506, 512 (Bankr.E.D.N.Y.2007) (listing 14 of the factors); *In re O'Brien*, 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005) (same); *In re Quinn*, 490 B.R. at 618 (listing all 16 factors but emphasizing the first six); *In re Baird*, 456 B.R. 112, 116–17 (Bankr. M.D. Fla. 2010) (listing 15 factors)).

[35] *In re RDX Technologies Corporation*, *Order Dismissing Bankruptcy Case*, Case No.; 2:15-bk-15859, Doc. 143 (Bankr. D. Ariz. May 23, 2016) (Dismissed and barred from refiling for 180 days, "for the reasons set form on the record." *In re RDX Technologies Corporation*, *Order Dismissing Chapter 11 Case*, Case No. 2:17-bk14387-PS, Doc 143 (Bankr. Ariz. November 29, 2018) (Dismissed by stipulation amongst the parties. Debtor not allowed to file bankruptcy for 180 days.).

Creditors' claims are on hold while Debtor parks in bankruptcy."[36] Additionally, even now, Debtor consciously opposes the CWT Parties' collection efforts outside of bankruptcy after the court dismissed the Second Case. This factor weighs in favor of the CWT Parties.

Factor 9. *Whether Debtor filed the case in response to a judgment in pending litigation*

Debtor filed the First Case in response to a judgment entered against him and in favor of the CWT Parties. In addition, Debtor's bankruptcy filing halted the litigation of Sigma Opportunity Fund II, LLC's action against Debtor in the Supreme Court of the State of New York. That Court signed a default summary judgment on January 12, 2016 and awarded Sigma $2,340,800.00 in damages, plus interest.  However, before the order was entered, Debtor filed his First Case. As Debtor did not inform the New York Court of his bankruptcy, Sigma filed a notice with the New York Court regarding Debtor's First Case. Thereafter, Sigma sought relief from the automatic stay, to have judgment entered. This factor weighs in favor of the CWT Parties.

Factor 13. *Whether Debtor employed a deliberate and persistent pattern of evading a single major creditor*

As stated above, Debtor employed a deliberate and persistent pattern of evading the CWT Parties. The CWT Parties' debt represents almost one-third of all Debtor's debt. This factor weighs in favor of the CWT Parties.

Factor 16. *Whether there are multiple bankruptcy filings or other procedural gymnastics*

Debtor filed three bankruptcy cases in the District of Wyoming and one in the District of Arizona in the past three and one-half years. Debtor's actions considered procedural gymnastics include failure get a plan approved in the First Case; failure to file monthly operating reports so the court and creditors would not know his current financial status; "opting out" of filing a plan in the Second Case; the need for creditors to file multiple adversaries and request for relief from the stay; lack of good faith in filing and administering the previous cases; and opening a second bank account for the purpose of saving funds to pay the IRS tax liability despite failing to resolve his tax liability. Debtor has multiple filings and procedural stalling to enjoy the benefits of the automatic stay but failed to perform his duties. This factor weighs in favor of the CWT Parties.

All factors the CWT Parties rely on support dismissal.

---

[36] *Decision Memorandum on CWT's Motion to Dismiss, In re Danzik*, Bankr. Case. No. 17-20934, Doc. 201, p. 12 (Bankr. D. Wyo. February 6, 2019).

The court finds other factors also support dismissal. First, factor 10 – the unfairness of using Chapter 7. Debtor had two Chapter 11 cases dismissed and never asserted conversion in the creditors' and the estate's best interest, but shortly thereafter filed this Chapter 7 case. After filing the Chapter 7 case, the court denied Debtor's request to extend the stay finding it is unfair to creditors to allow Debtor to use Chapter 7 to make an end run around the court's previous orders of dismissal. This factor weighs in favor of the CWT Parties. Second, factor 12 – whether Debtor transferred assets. The New York court found Mr. Danzik improperly converted tax credits. Mr. Hinz confirmed these credits were used in the operations of RDX Technologies.

Third, factor 14 – whether Debtor failed to make candid and full disclosure. The court is concerned about Debtor's veracity disclosing information. For example, Debtor's assets in the Chapter 11 cases are valued greater than the same assets in his Chapter 7.

| Description | Chapter 11 values | Chapter 7 value |
|---|---|---|
| Bentley Arnage | $76,300.00 | $35,000.00[37] |
| GMC Arcadia | $18,500.00 | |
| KTM 690 Enduro | $5,500.00 | $4,500.00 |
| Jaguar | $9,000.00[38] | |
| 2011 "Huckabee" signed by Behinger Electric Guitar | $6,500.00[39] | |
| 2011 Crestwood "CMA" signed Acoustic | $2,200.00 | $1,200.00 |
| 1977 Lincoln Continental Batmobile-case 003 | $250,000.00 | $250,000.00 |
| 1989 Chevrolet Caprice Batmobile-car 004 | $185,000.00 | $185,000.00[40] |
| 1974 Ford Torino | $34,000.00 | $24,000.00[41] |

---

[37] A Motion for Relief is pending, filed by TD Auto Finance, LLC, ECF No. 24.
[38] The GMC Arcadia nor the Jaguar are listed on the Chapter 7 schedules, nor does the Statement of Financial Affairs reflect transfers.
[39] This is not listed on the Chapter 7 Schedule A/B, nor does Debtor disclose a transfer or sale on his Statement of Financial Affairs.
[40] Mr. Danzik testified the "bat mobiles" are valued at $1 million.
[41] Mr. Danzik testified Biltmore loan was paid. The court notes Creditor was granted stay relief. Case No. 16-20002, ECF No. 384. It appears this creditor may have been paid during the Second Case, without court's knowledge or approval.

Debtor testified, or counsel informed the court, throughout the cases Debtor filed multiple Federal income tax returns. However, even as late as the hearing on this matter, the IRS' Proof of Claim reflects estimated tax liabilities for 2016, 2017 and 2018 tax years for failure to file a return or provide necessary documentation. The inconsistencies and failure to fully disclose leave the court wondering if the assets were overvalued in the Chapter 11, now under-valued in the Chapter 7 or improperly transferred. This factor weighs in favor of the CWT Parties.

The court finds factors 4 and 15– income and resources in relation to debt favor Debtor. The majority value of Debtor's listed assets are tied up in promissory notes RDX Technologies owes to Debtor and the potential recovery under a lawsuit in Canada. However, recovery of these assets is speculative and without success, Debtor will not be able to pay a substantial portion of his debts given the large judgments against him. Debtor did not reduce his creditors to a single creditor in the months prior to filing his petition so factor 7 also weighs in his favor.

The court is without enough information or does not find the other factors apply: factor 3 – Debtor's failure to make significant lifestyle changes; factor 5 – whether Debtor inflated expenses to disguise financial well-being; factor 8 – whether Debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle; factor 11 – whether Debtor is paying debts to insiders.

The court's analysis demonstrates the majority of the factors weigh in favor of the CWT Parties. Under the totality of the circumstances, described above, the court finds CWT Parties met its burden proving cause to dismiss the Chapter 7 case for bad faith. The burden shifts to Debtor to prove good faith.

Debtor responds the bankruptcy court does not have the ability to dismiss a chapter 7 case for lack of good faith. The court disagrees, as explained above.

Debtor testified the ability to obtain a "fresh start," the benefit of the discharge is among the many purposes for chapter 7 relief, and the desire to have an orderly distribution of assets without one opportunistic creditor "grabbing the whole apple cart" show his good faith. Based on Debtor and CWT Parties' history, that "one opportunistic creditor" refers to the CWT Parties and their actions of serving an Injunctive Notice on Debtor's bank where Debtor maintained the tax and DIP accounts. It is no surprise Debtor seeks a discharge. Aside, from the CWT Parties non-dischargeable debt, Debtor potentially seeks to discharge a significant amount of unsecured debt.

Additionally, the realistic results of his chapter 7 is to only pay the Internal Revenue Service tax liability.

   C. <u>Res judicata</u>

The court having found cause to dismiss Debtor's Chapter 7 case, will not address this issue.

   D. <u>Dismissal with prejudice</u>

The CWT Parties request the court dismiss Debtor's Chapter 7 bankruptcy case with prejudice. The dismissal of a case " 'for cause' does not *ipso facto* bar future filings."[42] Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in Section 109(g) of this title.

Section 109(g) provides:

> [N]o individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1)   the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2)   the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

   1. *180-day bar*

The Tenth Circuit determined "in order to dismiss a case with prejudice to refiling, the Court is limited to the provisions contained in 11 U.S.C. § 109(g), finding a bankruptcy court may not deny future access to bankruptcy courts for more than 180 days."[43] As the CWT Parties request a 180-day bar to Debtor's ability to refile, this is not an issue.

   2. *With prejudice*

The court having determined Debtor's conduct is sufficient, under the totality of the circumstances to dismiss the case, it must now determine whether "with prejudice" is the

---

[42] *In re Casse*, 196 F.3d 327, 335 (2nd Cir. 1999).
[43] *Frieouf v. United States* (*In re Frieouf*), 938 F.2d 1099, 1103-4 (10th Cir. 1991)).

appropriate sanction. There are two possible sanctions the court can apply. Section 109(g) determines whether Debtor may access the bankruptcy court in the future; whereas Section 349(a) determines whether Debtor will be entitled to discharge certain debts in future cases. The CWT Parties ask this court to dismiss with prejudice to prevent Debtor from filing another petition within 180 days, so the court need not address the alternative. The CWT Parties do not reference Section 105, but courts within the Tenth Circuit hold a court may not use Section 105 to extend its authority to dismiss with prejudice unless the requirements of Section 349 and 109 are used.[44]

Under Section 109(g), the court may determine Debtor is ineligible for bankruptcy relief for a period of 180 days if he: 1) willfully violated a court order; 2) failed to prosecute a case; or 3) voluntarily dismissed the case after a creditor has filed a motion for relief from stay. "Dismissal with a bar to refiling is an extreme remedy to be invoked with caution and restraint."[45] An injunction against future filings acts as dismissal of a case before one is filed. Because Debtor's creditors and financial circumstances may change from time-to-time, barring future filings prevents him from restructuring or discharging debts not affected by a prior case's bad faith.

The Tenth Circuit concluded: "[A] bankruptcy court may not deny future access to bankruptcy court, except under the circumstances of section 109(g)."[46] Courts within the Tenth Circuit are split on the interpretation of the *Frieouf* case. Some courts find bad faith does not fall within the Section 109(g) constraints.[47] "There is no reference in § 109(g) to repetitive filings or dismissal under circumstances of bad faith."[48] Others find a court can condition new petitions when: (1) a debtor demonstrated bad faith or defiance, and (2) when a debtor's conduct was abusive or prejudicial to creditors.[49]

---

[44] *In re Gray*, No. 13-09-14275 JA., 2009 WL 3849710, at *2 (Bankr. D.N.M. 2009); *In re Merrill*, 192 B.R. 245, 252 (Bankr. D. Colo. 1995).
[45] *In re Merrill*, 192 B.R. at 252.
[46] *In re Frieouf*, 938 F.2d 1099, 1103 (10th Cir. 1991).
[47] *In re Gray*, No. 2009 WL 3849710, at *2; *In re Merrill*, 192 B.R. at 252.
[48] *In re Merrill*, 192 B.R. at 252.
[49] *In re Norton*, 319 B.R. 671, 681 (Bankr. D. Utah 2005); *In re Guebert*, No. 07-41165, 2008 WL 1744777, at *8 (Bankr. D. Kan. Apr. 11, 2008); *In re Hancock*, No. 15-10037-JDL, 2015 WL 1292387, at *6 (Bankr. W.D. Okla. Mar. 19, 2015).

Successive filings do not necessarily constitute defiant conduct, but multiple filings may be evidence of such when a debtor continually fails to actively prosecute her bankruptcy cases.[50] Debtor filed a plan the court would not confirm after being in bankruptcy for 14 months. In his Second Case, he "opted out" of filing a plan and remained in bankruptcy another 14 months until the court dismissed it. During this time, Debtor did not, and still has not, resolved his IRS tax liability, which will only delay this case further.[51] He exacerbated this by not paying most if not all creditors since he filed the First Case.

A debtor prejudices a creditor when, through repeated filings, denies the creditor the opportunity to exercise its remedies because of the automatic stay.[52] "Abusive serial filing not only denies the creditor certain rights, it allows a 'rapacious' debtor to use the automatic stay as a sword against its creditor: this is not the purpose of § 362."[53]

When considering possible sanctions, courts are mindful to impose the least onerous sanction to remedy the prejudice, punish the past wrongdoing, and/or deter future wrongdoing.[54] Debtor has not changed his conduct since he filed his First Case over three and one-half years ago. Despite this court's findings on at least two occasions that Chapter 7 was not in the best interest of creditors, Debtor filed this Chapter 7 case where again the parties are in limbo with no movement on this case. This dismissal has no meaning if he can simply re-file the very next day or month without any meaningful change in circumstances.

The court sides with those cases finding a debtor's bad faith conduct warrant a filing injunction when a debtor's conduct is defiant and prejudicial to creditors or abusive. Debtor has manipulated the bankruptcy system and used it as his own personal shield from creditors' collection efforts. Debtor's conduct is sufficiently evasive, defiant, and abusive to dismiss the case with prejudice.

**CONCLUSION**

The court finds Debtor filed his Chapter 7 in bad faith. The CWT Parties met their burden. Debtor did not overcome that by showing he filed in good faith. The dismissal will not

---

[50] *In re* Norton, 319 B.R. at 683.
[51] Debtor has been in Chapter 7 for over three months and still has not been able to conclude his 341 meeting.
[52] *In re Norton*, 319 B.R. at 683–84.
[53] *Id.*
[54] *In re Krause*, 367 B.R. 740 (Bankr. D. Kan. 2007).

prejudice creditors. Debtor's case shall be dismissed for cause. Debtor shall not file another petition in any jurisdiction within 180 days of this Order.

The court expressly determines this decision memorandum is the findings and conclusions, pursuant to Fed. R. Bankr. P. 7052, and Fed. R. Civ. P. 52.  A judgment based on this ruling will be entered by separate document as required by Fed. R. Bankr. P. 7058 and Fed. R. Civ. P. 58(a).

BY THE COURT

*Cathleen D Parker*  6/24/2019

_____
Honorable Cathleen D. Parker
United States Bankruptcy Court
District of Wyoming

Service:
    Bradley T. Hunsicker
    Jeffrey M. Eilender
    Ken McCartney
    Dennis Wilenchik